ESTATE OF EVELYN B. PRICE, DECEASED, LARRY R. PRICE, INDEPENDENT EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Price v. Commissioner
Docket No. 26097-81.
United States Tax Court
T.C. Memo 1984-613; 1984 Tax Ct. Memo LEXIS 63; 49 T.C.M. (CCH) 154; T.C.M. (RIA) 84613; November 21, 1984. *63 Held, petitioner failed to produce positive proof of proper mailing of a missing income tax return. Hence, no presumption of delivery to respondent arises. Craig M. Stanfill, for the petitioner. Ana G. Cummings, for the respondent. WHITAKER MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined a deficiency in the Federal income tax liability of Evelyn B. Price, deceased, for her 1976 calendar year in the amount of $17,985.90. Mrs. Price died prior to the issuance of the statutory notice of deficiency and petitioner, her estate, of represented by Dr. Larry R. Price, independent executor. The sole issue for decision is whether the statute of limitations barred the issuance of the statutory notice, petitioner having conceded the deficiencies if we should hold against *64 it on this issue. For convenience, our Findings of Fact and Opinion are combined. Some of the facts have been stipulated and in all material respects they are so found. [1] At all times material, decedent was a resident of the State of Texas and on the date of filing of the petition Dr. Price, decedent's son, resided in E1 Paso, Texas. The statutory notice was mailed to petitioner on August 5, 1981. The factual issue with which we are confronted is whether or not an original 1976 income tax return was mailed to and received by respondent's Service Center at Austin, Texas, sometime during May or early June 1977. Respondent's Service Center has no record of the receipt of a tax return for decedent's 1976 calendar year until August 10, 1978, when a document purporting to be a copy of the 1976 income tax return was received in response to a request by the Service Center. This copy was signed by Dr. Price as the executor of decedent's estate. If, as petitioner contends, respondent received or is deemed to have received a 1976 calendar year return in 1977, assessment of the deficiency is barred by the three-year statute of limitations. Section 6501(a). [2] However, if, *65 as respondent contends, the first copy of a 1976 return was received by respondent on August 10, 1978, the statutory notice was timely. The question as to whether or not respondent received a return for 1976 on or before June 15, 1977, the due date as extended for that return, first arose in connection with respondent's examination of decedent's 1977 income tax return. That return was filed a few days prior to decedent's death on May 11, 1978, although no extension had been obtained. The 1977 return was mailed by decedent's accountant after Dr. Price had found the signed return, which was dated April 15, 1978, at his mother's home and delivered it to her accountant. The return claimed as a credit against the 1977 income tax liability an overpayment reflected on the 1976 income tax return. On July 10, 1978, an employee in respondent's Austin, Texas, *66 Service Center advised Dr. Price that the Service Center had no record of the decedent's 1976 tax return. On July 31, 1978, Dr. Price mailed to respondent's Service Center in Austin, Texas, an unsigned "taxpayer's copy" of decedent's 1976 return. This copy was received by the Service Center and, on August 7, 1978, it was returned immediately for Dr. Price's signature. [3] A signed copy was received by the Service Center on August 10, 1978. Since the statutory notice was dated August 5, 1981, it was issued within three years of the receipt of the signed copy of the return. Petitioner's contention is that the original 1976 income tax return of the decedent was signed by her, mailed by Dr. Price to the Service Center on May 21, 1978, and presumably lost by respondent after its receipt. At the outset, it is appropriate to note that the burden of proof as to the running of the statute of limitations *67 is upon the petitioner. ; . Under section 6501(a) the statute of limitations runs from the date on which the return is filed. [4] Section 301.6501(a)-1(a), Proced. & Admin. Regs., repeats the statutory rule. As a general rule, a return is deemed "filed" when it has been physically delivered to that office of respondent where the return is due to be filed. , affg. ; . In those relatively few cases where a return is purportedly mailed but never received, some courts have presumed receipt and subsequent loss by respondent's employees, where sufficiently precise proof is provided as to the mailing of a missing tax return. ; ; ; *68 ; Harzvi v. United States, an unreported case ( USTC par. 9712). Petitioner seeks to bring itself within the rationale of these cases. We agree with respondent, however, that petitioner's facts do not rise to the required level of certainty as to warrant the application to this case of such a presumption. The facts as to mailing consist solely of Dr. Price's testimony at the trial. Both decedent and Dr. Price used a firm of certified public accountants in El Paso, Texas, for income tax return preparation. For reasons not reflected in the record, the return preparer obtained an extension of time to file decedent's 1976 return to June 15, 1976. Dr. Price had been assisting his mother in connection with financial affairs, including tax returns, since her divorce *69 in 1972. Dr. Price testified that: In the spring of 1977, he obtained the original of that return from the accountant in El Paso, took it with him on a business trip to Houston, Texas, leaving E1 Paso on May 18; on May 19 he flew to Dallas where he rented an automobile and drove to Weatherford, Texas, where his mother was living; he spent the nights of May 19 and 20 in Weatherford; and he returned to Dallas and flew from there back to El Paso on May 21. Dr. Price further testified that while he was with his mother in Weatherford she signed the 1976 return and that on either May 20 or 21 he placed the 1976 return in a mail box or drop at the Weatherford post office. The only corroboration offered for Dr. Price's testimony consisted of American Express carrying charges included in its statement dated May 31, 1977. The bill indicates that a meal was eaten in a Houston restaurant on May 18; that a Houston-to-Dallas ticket was purchased from Southwest Airlines on May 19 but with no indication of the date of flight; that an automobile was rented in Houston on May 19; that a meal was eaten in a Dallas restaurant on May 19; that on some unknown date an automobile was rented in *70 Dallas; and that meals were eaten in Dallas on May 21. Dr. Price could recall very few details of the trip; much of his testimony was conjecture. [5] Dr. Price accounted for the absence of a charge for a room in Houston with the explanation that he spent the night with a doctor friend in order to observe a medical procedure, but no effort was made to obtain corroboration by that doctor. Additionally, while the witness was "sure" he obtained his plane ticket for the flight from El Paso to Houston from a travel agency, the agency was not identified or its records (if available) produced. If the trip to Weatherford had been planned as Dr. Price testified, it is difficult to understand why the travel agency did not issue a ticket for the entire trip--El Paso to Houston to Dallas and to El Paso. Another unexplained mystery is the letter from the accountant to the decedent dated May 20, 1977, which recites that it is enclosing the original and the taxpayer's copy of the 1976 tax return, with instructions for signing, dating and mailing. Dr. Price could not explain how this letter, dated two days after he assertedly had picked up the return, ended up in his possession. [6] It *71 seems unlikely that the transmittal letter would have been postdated but available for delivery to Dr. Price along with the tax return on May 18. It is equally unlikely that the transmittal letter would have been mailed to the decedent on or after May 20 if the tax return had already been picked up by Dr. Price to hand-deliver to the decedent. [7] The most logical explanation for the presence of the letter and the copy of the return in Dr. Price's possession is that both were found among his mother's papers after her death.The fact that she had signed but failed to mail the succeeding year's return is not without significance in this connection. Thus, we have substantial doubt as to the accuracy of Dr. Price's recollection. [8]
*72 Viewing the record as a whole, we are far from convinced that Dr. Price in fact hand-carried to the decedent her 1976 income tax return, watched her sign it and himself placed it in the mail. There is no testimony as to the address to which mailed, whether or not proper postage was on the envelope or even that Dr. Price knew in 1977 where to file an income tax return. The record in this case is at best ambiguous: it will not support a finding that the 1976 income tax return of the decedent was timely mailed to respondent in a stamped and correctly addressed envelope, which facts are essential to the creation of a presumption of receipt and loss by respondent. The facts simply do not justify the application of , and the later cases cited by petitioner. For example, in , the Court of Appeals for the Ninth Circuit described the issue as follows: We thus have before us only the question whether the presumption of delivery to the addressee arising from positive proof of proper mailing overcomes the presumption arising from proof that a search for the mailed matter *73 failed to reveal that it had been received. [Emphasis added.] Petitioner has not submitted "positive proof of proper mailing." We conclude that petitioner has not carried the burden of proving that decedent's 1976 income tax return was filed earlier than August 10, 1977. As a consequence, the three-year statute of limitations had not run prior to the issuance by respondent of the statutory notice. Decision will be entered for the respondent.
Footnotes
1. The stipulation of facts is inconsistent in some respects both with the testimony and with the stipulated documents. ↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Petitioner makes no contention that the unsigned copy was sufficient to start the statute of limitations running. Exhibit 7-G, described in the stipulation as the signed copy received on August 10, 1978, does not appear to be signed, presumably because of the photocopy process used.↩
4. In pertinent part, sec. 6501(a) provides: "General Rule.--Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) * * *."↩
5. For example, on cross-examination he testified: Q. And you were only there [in Weatherford] one day? A. I would assume that I was there--drove over the evening of the 19th. Was there the 20th and drove back the morning of the 21st. Q. You say you assume. You don't remember? A. I don't remember exactly. That is usually what I do * * *. ↩
6. Dr. Price was not asked how and when the "taxpayer copy" of the 1976 return (exhibit 7-G) came into his possession. ↩
7. In this connection, the original letter which was placed in evidence does not appear to have been folded, thus indicating that, if mailed, a large envelope was used. ↩
8. It is at least possible, as respondent suggests, that Dr. Price's recollection of mailing a tax return for the decedent was with respect to the 1975 tax return rather than the 1976 tax return.↩